IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

KURTIS ROY JETER,
     Plaintiff,

vs.                           Case No. 5:11cv135/RS/CJK

ISAAC KENNETH DUREN, et al.,
     Defendants.
_____

ORDER AND
REPORT AND RECOMMENDATION

     This cause is before the court upon plaintiff's verified fifth amended complaint (doc. 4-2), filed pursuant to 42 U.S.C. § 1983, and plaintiff's motion for summary judgment (doc. 8). Defendants, Isaac Kenneth Duren and Doug Pierce, who oppose plaintiff's summary judgment motion, have also filed motions for summary judgment (docs. 15, 16). After a careful review of the record and the arguments presented, the court concludes that plaintiff's motion for summary judgment should be DENIED, defendant Duren's motion for partial summary judgment should be GRANTED, and defendant Pierce's motion for summary judgment should be GRANTED.

THE COMPLAINT AND ALLEGATIONS

     Plaintiff, Kurtis Roy Jeter ("Jeter"), proceeding *pro se*, is an inmate of the Florida penal system currently confined at Bay Correctional Institution. Plaintiff's verified fifth amended complaint names two defendants, each sued in their individual

and official capacities:  (1) Isaac Kenneth Duren ("Duren") and (2) Doug Pierce ("Pierce").

At the time of the events giving rise to this complaint, plaintiff was a tenant living with his girlfriend, Sheree Vinson, at the Bay Point Studio Villas in Panama City, Florida.  The landlord, defendant Duren, charged $1000 per month for rent.  On November 20, 2006, plaintiff issued a check made payable to Duren in the amount of $1000, in consideration for the rent accrued as of October 2006.  (Doc. 4-2, 1)  The bank at which Duren deposited the check, Innovations Credit Union ("Innovations"), did not honor the instrument and returned a legal copy of the check to Duren.  The reason for the return was stated on the face of the check as "Not Authorized."  (Doc. 4-2, 1)  Bank records generated in connection with the check indicate that the bank tried to process the instrument on November 22, 2006, November 27, 2006, and February 21, 2007.  On or around February 21, 2007, the bank again returned the check to Duren as "Not Authorized."  (Doc. 17-1, 5-6)

On February 20, 2007, landlord Duren served plaintiff with a Notice to Quit, alleging that plaintiff was overdue on rental payments on his apartment unit.  (Doc. 17-1, 7)  Duren proceeded to file a complaint for eviction on February 26, 2007.  (Doc. 17-1, 9-10)  On or about April 5, 2007, Duren went to the Bay County Sheriff's Office to complain about the allegedly worthless check plaintiff had issued.  Duren made out an "Affidavit – Complaint" (doc. 17-1, 28), and provided a sworn statement to then Deputy Sheriff Doug Pierce.  (Doc. 17-1, 25-27)  In response to questioning from Pierce, Duren agreed that the subject check "had been cancelled" and returned as "not authorized."  Duren explained that he contacted the bank, which repeated only that the check was not authorized.  Pierce also contacted Innovations Credit Union

and discovered that plaintiff did not file an affidavit of forgery on the check.  (Doc. 15-1, 2)  Expressing a desire to prosecute, Duren affirmed that he had "never received the thousand dollars in any other way or means[.]"  (Doc. 17-1, 26)

On October 7, 2007, Pierce attempted to interview plaintiff at the Bay County Jail, where Mr. Jeter was already incarcerated in connection with a violation of probation charge.[1]  (Doc. 15-1, 3)  Plaintiff stated that he did not stop payment on the returned check, but, according to Pierce, declined to provide additional information or otherwise clarify the issue.  (Doc. 15-1, 3)  In his capacity as investigator with the Bay County Sheriff's Office, Pierce completed the documentation necessary to charge plaintiff with stopping payment with intent to defraud under § 832.041, Florida Statutes.  (Doc. 15, 5)

Pursuant to court order, plaintiff was released on the stopping payment with intent to defraud  charge from the Bay County Jail on June 13, 2007, but remained at that facility until July 15, 2007, when he was transferred to the Washington County Jail on a warrant for violation of probation in that county.  (Docs. 15-2, 15-3, 15-4)  On July 20, 2007, the state filed a no information, having found "insufficient evidence" to prosecute plaintiff for the offense of stopping payment with intent to defraud.  (Doc. 15-7)

In consideration of the foregoing events, plaintiff filed a civil action (doc. 4-2) in the Circuit Court for Bay County pursuant to 42 U.S.C. § 1983, naming as defendants Mr. Duren and Mr. Pierce.  Defendant Pierce filed a notice of removal (doc. 1), thereby removing the cause of action to this court.  In his verified fifth

---

[1] According to plaintiff, Duren contacted his probation officer and reported that Mr. Jeter owed him funds from a worthless check.  (Doc. 4-2, 2)  Plaintiff reasons that the ensuing arrest for violating his probation was occasioned by Duren's report.

amended complaint, plaintiff raises five claims against each defendant, alleging (1) abuse of process, (2) false arrest, (3) malicious prosecution, (4) false imprisonment, and (5) intentional infliction of emotional distress.  Plaintiff advances each claim as a civil rights violation under § 1983 and as a state-law tort.  Alleging economic loss, plaintiff seeks compensatory and special damages in the amount of $591,776.67 on each of ten counts, as well as punitive damages.

### DEPUTY PIERCE'S MOTION FOR SUMMARY JUDGMENT

Defendant Pierce, pursuant to FEDERAL RULE OF CIVIL PROCEDURE 56, moved for summary judgment (doc. 15) against the plaintiff.  Pierce asserts that the pleadings, discovery and disclosure materials, and affidavits filed in support of the motion for summary judgment show that there are no genuine issues of material fact. Accordingly, Pierce concludes, he is entitled to summary judgment as a matter of law. (Doc. 15, 1-3)

The motion for summary judgment proceeds under the theory that plaintiff cannot sue Pierce either in his official or individual capacity.  Pierce contends that to the extent plaintiff has brought suit against him in his individual capacity, he is protected by the theory of qualified immunity.  (Doc. 15, 2)  Regarding the state-law torts, Pierce maintains that he is immune from liability for such claims pursuant to the provisions of § 768.28(9)(a), Florida Statutes.  (Doc. 15-2)

### RESPONSE TO PIERCE'S MOTION FOR SUMMARY JUDGMENT

Plaintiff responds that § 768.28(9)(a), Florida Statutes, does not shelter Pierce from liability for the state-law torts alleged.  (Doc. 28, 2)  Alleging that Pierce "acted in bad faith, and with malicious purpose and in a manner exhibiting wanton and willful disregard of human rights, safety, and property," plaintiff reasons that the

immunity available under § 768.28(9)(a) is inoperative in this case.  (Doc. 28, 2)
According to plaintiff, "Pierce was acting under color of law as a Bay County Deputy
Sheriff and knowingly and maliciously violated clearly established law of which a
reasonable officer would be aware."  (Doc. 28, 2)  Consequently, Jeter concludes,
"Pierce is not entitled to qualified immunity in his individual capacity as to Plaintiff's
claims brought pursuant to federal law." (Doc. 28, 2)  Moreover, plaintiff alleges that
"Pierce maliciously fabricated the stop-payment charge after being provided with
readily available exculpatory evidence by Plaintiff prior to Plaintiff's arrest, showing
that Plaintiff had committed no crime."  (Doc. 28, 3)

ANALYSIS OF PIERCE'S SUMMARY JUDGMENT MOTION

Summary judgment "should be rendered if the pleadings, the discovery and
disclosure materials on file, and any affidavits show that there is no genuine issue as
to any material fact and that the movant is entitled to judgment as a matter of law."
FED. R. CIV. P. 56(c)(2).  To prevail on a motion for summary judgment, the movant
must show that the plaintiff has offered no evidence to support an essential element
of his case, or present affirmative evidence that plaintiff will be unable to prove one
or more essential elements of the case at trial.  *See Celotex Corp. v. Catrett*, 477 U.S.
317, 322 (1986) ("[T]he plain language of Rule 56(c) mandates the entry of summary
judgment . . . against a party who fails to make a showing sufficient to establish the
existence of an element essential to that party's case, and on which that party will
bear the burden of proof at trial.").  If the movant successfully negates an essential
element of the plaintiff's case, the burden shifts to the plaintiff to come forward with
evidence demonstrating a genuine issue of material fact for trial.  *See id.*

"[T]he mere existence of *some* alleged factual dispute between the parties will
not defeat an otherwise properly supported motion for summary judgment; the

requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing law[.]"  *See id.* at 248.  A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *See id.*  "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

To that end, "[a] mere scintilla of evidence in support of the nonmoving party will not suffice to overcome a motion for summary judgment."  *Young v. City of Palm Bay, Fla.*, 358 F.3d 859, 860 (11th Cir. 2004).  Likewise, "'unsupported speculation . . . does not meet a party's burden of producing some defense to a summary judgment motion'" and "does not create a genuine issue of fact."  *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) (quoting *Hedberg v. Ind. Bell Tel. Co.*, 47 F.3d 928, 931-32 (7th Cir. 1995)).  Rather, the party opposing summary judgment must either point to evidence in the record or present additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.  *See Celotex Corp.*, 477 U.S. at 333 n.3 ("Once the moving party has attacked whatever record evidence–if any–the nonmoving party purports to rely upon, the burden of production shifts to the nonmoving party, who must either (1) rehabilitate the evidence attacked in the moving party's papers, (2) produce additional evidence showing the existence of a genuine issue for trial as provided in Rule 56(e), or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f)."); *Anderson*, 477 U.S. at 250 (providing that the standard for granting summary judgment "mirrors the standard for a directed verdict under Federal Rule of

Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict").

The court now turns to plaintiff's complaint (doc. 4-2) to determine whether he has raised a claim on which he is entitled to adjudication by this court.  As a preliminary matter, the court notes that plaintiff has relinquished his claims against Pierce in his official capacity.  "Such suits against municipal officers are . . . in actuality, suits directly against the city that the officer represents."  *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991).  Plaintiff acknowledges the absence of record evidence to support the notion that Pierce had final policy-making authority during the time in which he was employed as a Bay County Deputy Sheriff.  (Doc. 28, 20)  Accordingly, Pierce is entitled to summary judgment as a matter of law as to any claims raised against him in his official capacity.  *See Morro v. City of Birmingham*, 117 F.3d 508, 510 (11th Cir. 1997) ("Municipal liability under 42 U.S.C. § 1983 may be premised upon a single illegal act by a municipal officer only when the challenged act may fairly be said to represent official policy, such as when that municipal officer possesses final policymaking authority over the relevant subject matter."); *Busby*, 931 F.2d at 776 ("[I]n order to recover against a municipality, a plaintiff must establish that the alleged racial discrimination or harassment occurred pursuant to a custom or policy of the municipality.").

Remaining, then, are the individual capacity allegations.  Underlying each of the claims is plaintiff's unwavering insistence that he did not stop payment on the November 2006 rent check, and was therefore actually innocent of the offense charged in connection with that check.  Plaintiff alleges first that "Pierce, while operating concurrently with . . . Duren, made an illegal, improper, perverted use of process in that he used the criminal legal process against Plaintiff primarily to

accomplish a purpose for which it was not designed, namely to collect a civil debt, and misused this process after it issued." (Doc. 4-2, 8)  Jeter asserts that the warrantless arrest resulting from the alleged abuse of process violated his right under the Fourth Amendment to the U.S. Constitution to be free from unreasonable seizure. (Doc. 4-2, 11)  In his motion for summary judgment, Pierce contends (1) that he is insulated from liability by qualified immunity, and (2) that the abuse of process claim is unsupported by the evidence of record.  (Doc. 15, 19)

The doctrine of qualified immunity "is a guarantee of fair warning." *McElligott v. Foley*, 182 F.3d 1248, 1260 (11th Cir. 1999).  "Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "'The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law.'"  *Id.* (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks and citations omitted)).

"'For qualified immunity to be surrendered, pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law *in the circumstances*.'"  *Alexander v. Univ. of N. Fla.*, 39 F.3d 290, 291 (11th Cir. 1994) (quoting *Lassiter v. Ala. A&M Univ., Bd. of Trs.*, 28 F.3d 1146, 1150 (11th Cir. 1994) (en banc)).  "When evaluating a claim for qualified immunity, a court must determine (1) whether the facts alleged, viewed in the light

most favorable to the plaintiff, show that the officer's conduct violated a constitutional right, and (2) whether, under the facts alleged, there was a violation of 'clearly established law.'" *Williams v. Santana*, 340 F. App'x 614, 617 (11th Cir. 2009) (citing *Pearson v. Callahan*, 555 U.S. 223, 239-41 (2009)). "'The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Vinyard*, 311 F.3d at 1350 (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)).

Based on the foregoing authorities, plaintiff bears the burden to show the existence of a genuine issue for trial as it relates to his arrest and the question of whether Pierce arrested Jeter in violation of clearly established law.  Though the former deputy sheriff concedes that plaintiff should have been charged under § 832.05(4)(a), Florida Statutes (making it a criminal offense to obtain property or services in return for worthless checks, drafts, or debit card orders), Pierce maintains that he had arguable probable cause, if not outright probable cause, to make the subject arrest.[2]  (Doc. 15, 9)  Consequently, Pierce concludes, he did not violate plaintiff's Constitutional rights, clearly established or otherwise.

"In order for probable cause to exist, 'an arrest [must] be objectively reasonable under the totality of the circumstances.'" *Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998) (quoting *Bailey v. Bd. of Cnty. Comm'rs of Alachua Cnty., Fla.*, 956 F.2d 1112, 1119 (11th Cir. 1992)).  "This standard is met when 'the facts and circumstances within the officer's knowledge, of which he or she has reasonably

---

[2] In fact, plaintiff was charged under § 832.041, Florida Statutes (defining the crime of stopping payment with intent to defraud).

trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *Id.* (quoting *Williamson v. Mills*, 65 F.3d 155, 158 (11th Cir. 1995)). To receive qualified immunity protection, however, "an officer need not have actual probable cause but only arguable probable cause." *Hardy v. Broward Cnty. Sheriff's Office*, 238 F. App'x 435, 440 (11th Cir. 2007) (quoting *Wood v. Kesler*, 323 F.3d 872, 878 (11th Cir. 2003)). "Because only arguable probable cause is required, 'the inquiry is not whether probable cause actually existed, but instead whether an officer reasonably could have believed that probable cause existed, in light of the information the officer possessed.'" *Id.* (quoting *Montoute v. Carr*, 114 F.3d 181, 184 (11th Cir. 1997)). "The standard is an objective one and therefore does not include an inquiry into the officers' subjective intent or beliefs." *Von Stein v. Brescher*, 904 F.2d 572, 579 (11th Cir. 1990) (citations omitted).

"Whether an officer possesses arguable probable cause depends on the elements of the alleged crime and the operative fact pattern." *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1257 (11th Cir. 2010). Here, Pierce arrested plaintiff for an alleged violation of § 832.041, Florida Statutes, which defines the crime of stopping payment with intent to defraud:

> Whoever, with intent to defraud any person shall, in person or by agent, make, draw, utter, deliver, or give any check . . . for the payment of money upon any bank, person, or corporation and secure from such person goods or services for or on account of such check, . . . whether such goods or services are valued at the amount of such check, . . . and who shall, pursuant to and in furtherance of such intent to defraud, stop payment on such check, . . . shall be deemed to be guilty of a felony of the third degree, . . . if the value of the goods or services secured for or on account of such check . . . is $150 or more . . . .

In accordance with the prevailing legal standard, the court must consider whether Pierce reasonably could have believed, in light of the information he possessed, that probable cause existed to make an arrest. *See Hardy*, 238 F. App'x at 440.  The parties agree that on November 20, 2006, plaintiff issued a check made payable to Duren, his landlord, in the amount of $1000, in payment of the October 2006 rent.  (Doc. 4-2, 1)  Despite plaintiff's claim that he deposited funds sufficient to cover the check on the same day he passed it, the bank declined to honor the instrument when presented by Duren, returning the check as "Not Authorized."[3] (Doc. 4-2, 1)  On or around April 5, 2007, Duren went to the Bay County Sheriff's Office, where he made out an affidavit and complaint concerning the allegedly worthless check.  (Doc. 17-1, 28)  Duren also provided a sworn statement to then Deputy Sheriff Pierce, who asked Duren specifically whether the check had been "cancelled."  (Doc. 15-1, 10)  Confirming this characterization, Duren explained that the bank informed him merely that the check was "not authorized."  (Doc. 15-1, 10) Moreover, Duren attested that he had not received the value of the check in any other way or means.  (Doc. 15-1, 10)

Pierce avers that he then contacted Innovations Credit Union independently, discovering that plaintiff did not file an affidavit of forgery on the check in dispute. (Doc. 15-1, 2)  On October 7, 2007, Pierce interviewed plaintiff at the Bay County Jail, where Mr. Jeter was already incarcerated.  (Doc. 15-1, 3)  Plaintiff told Pierce that he did not stop payment on the check, but the litigants' versions of events diverge from this point.   According to Pierce, plaintiff declined to provide additional

---

[3] Bank records submitted in conjunction with Duren's motion for summary judgment indicate that the bank tried to process the check for at least the second time on February 21, 2007, but again returned the instrument as "Not Authorized."  (Doc. 17-1, 5)

information or otherwise clarify the issue of the returned check.  (Doc. 15-1, 3)  On the other hand, plaintiff alleges he explained to Pierce that Duren's allegations were false and that the controversy could be resolved by "readily available exculpatory evidence."  (Doc. 28, 6)  Plaintiff contends further that Pierce "refused to accept the exculpatory evidence, refused to contact [his] credit union to verify that no stop-payment had occurred . . . and without investigation . . . [M]irandized [him] for the fabricated charge of stopping payment with intent to defraud."  (Doc. 28, 6)  Pierce ultimately prepared documents that induced plaintiff's arrest for the charge of stopping payment with intent to defraud, in violation of § 832.041, Florida Statutes. (Doc. 15-1, 2)

In light of the information he possessed, Pierce reasonably could have believed that probable cause existed to arrest plaintiff for some offense, if not the offense actually charged.  Pierce knew that Duren had made out an affidavit and complaint alleging the receipt of a check that could not be cashed or deposited.  (Doc. 17-1, 28) According to Pierce, Duren produced a copy of the check upon his arrival at the Sheriff's Office.  (Doc. 15-1, 2)  Duren then explained to Pierce that he received the check from plaintiff, a tenant, as payment for rent, and that the check had been returned by plaintiff's credit union as "Not Authorized."  (Doc. 15-1, 9-10)  Further, Duren affirmed that he "discovered that the check had been cancelled . . . ."  (Doc. 15-1, 10)  Asserting that he had not received the rent payment in any other way or means, Duren gave Pierce good reason to believe that under the circumstances shown, plaintiff had committed a criminal offense.  (Doc. 15-1, 10)

The undisputed facts concerning the presentation of the check and nonpayment by the bank establish the arguable probable cause necessary to entitle Pierce to qualified immunity as against plaintiff's claim of abuse of process, which he bases

on the allegedly unreasonable ensuing arrest.  *See Skop v. City of Atlanta, GA*, 485 F.3d 1130, 1138 (11th Cir. 2007) (affirming that arguable probable cause is "'all that is required for qualified immunity to be applicable to an arresting officer'" (quoting *Scarbrough v. Myles*, 245 F.3d 1299, 1302 (11th Cir. 2001) (per curiam))); *Paullin v. City of Loxley, AL*, 171 F. App'x 773, 773 (11th Cir. 2006) (holding police sergeant had arguable probable cause to arrest for first degree theft, and was thus entitled to qualified immunity on a false arrest claim and a federal malicious abuse of process claim); *Wood*, 323 F.3d at 881 n.13 ("[A]rguable probable cause . . . is all that is required for an arresting officer to be entitled to qualified immunity from a Fourth Amendment claim.").

Plaintiff offers two arguments in response to the defense of arguable probable cause, neither of which are availing.  Plaintiff contends first that Pierce failed to conduct a constitutionally sufficient investigation, alleging that he offered to Pierce "exculpatory evidence" when the deputy sheriff interviewed him at the Bay County Jail, but that Pierce "refused" to acknowledge it.  (Doc. 28, 10-11)  The law is clear, however, that a law enforcement is entitled to rely "to a meaningful degree" on a victim's statements in determining the existence of probable cause.  *See Rankin*, 133 F.3d at 1440-41 ("Generally, an officer is entitled to rely on a victim's criminal complaint as support for probable cause.").  Moreover, evidence other than Duren's statements—such as the copy of the check and Pierce's personal contact with the credit union—supported the conclusion that plaintiff had committed a criminal offense in passing the check at issue.  Considered in conjunction with the other supporting evidence, Duren's statements were sufficiently reliable and trustworthy at their core to form the basis for arguable probable cause to arrest plaintiff.  *See Grider*, 618 F.3d at 1257 ("Probable cause may exist based on the collective

knowledge of law enforcement officials derived from reasonably trustworthy information."); *Ortega v. Christian*, 85 F.3d 1521, 1525 (11th Cir. 1996) ("Probable cause does not require overwhelmingly convincing evidence, but only 'reasonably trustworthy information.'" (quoting *Marx v. Gumbinner*, 905 F.2d 1503, 1506 (11th Cir. 1990))); *see also Baker v. McCollan*, 443 U.S. 137, 145-46 (1979) (determining that once an officer makes an arrest based upon probable cause, the officer need not "investigate independently every claim of innocence").  At best, plaintiff has shown that, if everything he says is true, he may have had a defense to the crime charged. But the existence of a defense does not negate probable cause.  *See Marx*, 905 F.2d at 1508 ("That a defendant is subsequently acquitted or charges are dropped against the defendant is of no consequence in determining the validity of the arrest itself."); *Howell v. Tanner*, 650 F.2d 610, 615 (5th Cir. 1981) ("Once probable cause has been established, the legality of the arrest is not affected by . . . a subsequent dismissal or acquittal of the charges.").  Plaintiff, who has never identified the nature of the exculpatory evidence available at the time directly preceding his arrest, has not carried his burden to "produce additional evidence showing the existence of a genuine issue for trial . . . ."  *See Celotex Corp.*, 477 U.S. at 333 n.3.

Plaintiff, in essence, also argues that he was wrongly charged.  Relying on the alleged absence of evidence tending to establish that he stopped payment on the check, plaintiff asserts that no probable cause existed to arrest him for the offense of stopping payment with intent to defraud.  That Pierce may have charged plaintiff with the incorrect statutory offense is not determinative of the existence of arguable probable cause or, by extension, the applicability of qualified immunity.  *See Grider*, 618 F.3d at 1257 ("If the arresting officer had arguable probable cause to arrest for *any* offense, qualified immunity will apply.") (emphasis added); *Skop*, 485 F.3d at

1138 (noting officer would be entitled to qualified immunity if he possessed probable cause or arguable probable cause to arrest plaintiff for either of the offenses with which she was charged).  Because Pierce possessed arguable probable cause to arrest plaintiff for the offense of obtaining property or services in return for worthless checks, drafts, or debit card orders, as defined in § 832.05, Florida Statutes, the fact that Pierce effected the arrest on a slightly different charge does not disable the shield of qualified immunity to which he is entitled.

Having disposed of the abuse of process claim and determined that Pierce had arguable probable cause to make the subject arrest, the court turns to the remainder of plaintiff's federal allegations.  Reiterating an argument similar to that advanced in connection with his claim of abuse of process, plaintiff next alleges a claim for false arrest.  Plaintiff contends that Pierce "fabricated" the probable cause narrative and that no probable cause existed on which to base his arrest. (Doc. 4-2, 14-15)  Plaintiff again submits that the warrantless arrest, in the alleged absence of probable cause, violated his right to be free from unreasonable seizure as guaranteed by the Fourth Amendment to the Constitution.

As explained above, "arguable probable cause . . . is all that is required for an arresting officer to be entitled to qualified immunity from a Fourth Amendment claim." *Wood*, 323 F.3d at 881 n.13; *see also Grider*, 618 F.3d at 1257 n.25 ("We . . . use the same 'arguable probable cause' standard in the qualified immunity context for § 1983 claims for both false arrest and malicious prosecution, as both require a violation of the Fourth Amendment.").  The undisputed material facts in this matter demonstrate that Pierce possessed arguable probable cause to arrest plaintiff for the criminal offense of obtaining property or services in return for worthless checks,

drafts, or debit card orders.  Accordingly, Pierce is entitled to qualified immunity from plaintiff's claim of false arrest.

As he does in relation to the claim of false arrest and at various other junctures of his complaint, plaintiff here relies on a theory of actual innocence to defeat any finding of probable cause or arguable probable cause.  Such arguments, however, are unavailing.  *See Marx*, 905 F.2d at 1508 ("That a defendant is subsequently acquitted or charges are dropped against the defendant is of no consequence in determining the validity of the arrest itself."); *Howell*, 650 F.2d at 615 ("Once probable cause has been established, the legality of the arrest is not affected by . . . a subsequent dismissal or acquittal of the charges."); *see also Baker*, 443 U.S. at 145 ("The Constitution does not guarantee that only the guilty will be arrested.  If it did, § 1983 would provide a cause of action for every defendant acquitted—indeed, for every suspect released.").  That the state ultimately filed a no information is thus immaterial to the analysis of arguable probable cause and the fate of those claims to which probable cause or arguable probable cause is a bar.

Moreover, one cannot ignore that plaintiff relies largely on speculation and bare assertions in determining that Pierce, acting either alone or in concert with Duren, fabricated the underlying charge, but such conjecture does not allow for successful opposition to a motion for summary judgment.  *See Solliday v. Fed. Officers*, 413 F. App'x 206, 207 (11th Cir. 2011) ("Conclusory, uncorroborated allegations by a plaintiff in an affidavit or deposition will not create an issue of fact for trial sufficient to defeat a well supported summary judgment motion."); *Cordoba*, 419 F.3d at 1181 (holding that "'unsupported speculation . . . does not meet a party's burden of producing some defense to a summary judgment motion'" (quoting *Hedberg*, 47 F.3d at 931-32)).  Plaintiff's evidence, consisting primarily of his own

unsupported inferences, would not allow a reasonable jury to return a verdict in his favor. *See Anderson*, 477 U.S. at 247-48.

For his third claim against defendant Pierce, plaintiff alleges malicious prosecution. Plaintiff asserts that Pierce "was the legal cause of the original proceeding" against him, which, according to Mr. Jeter, had as its impermissible object the collection of a civil debt by coercion. (Doc. 4-2, 18) "To establish a federal malicious prosecution claim under § 1983, a plaintiff must prove (1) the elements of the common law tort of malicious prosecution, and (2) a violation of her Fourth Amendment right to be free from unreasonable seizures." *Kingsland v. City of Miami*, 382 F.3d 1220, 1234 (11th Cir. 2004). The existence of arguable probable cause, however, is an absolute bar to a § 1983 claim for malicious prosecution. *See Grider*, 618 F.3d at 1257 n.25 ("We . . . use the same 'arguable probable cause' standard in the qualified immunity context for § 1983 claims for both false arrest and malicious prosecution, as both require a violation of the Fourth Amendment."). Because Pierce had arguable probable cause to effect plaintiff's arrest, the latter's claim for malicious prosecution must fail as a matter of law.

Plaintiff's fourth claim against defendant Pierce is one for false imprisonment. Plaintiff alleges that he was unlawfully detained and deprived of liberty for 131 days, despite alleged overtures to Pierce to conduct a more comprehensive investigation of the circumstances surrounding the rent check plaintiff issued to Duren. (Doc. 4-2, 21-22) To the extent the law distinguishes between the causes of false imprisonment and false arrest, such that the court is yet to dispose of the false imprisonment allegation, plaintiff still cannot survive the motion for summary judgment on this claim. Arguable probable cause serves equally as a bar to a § 1983 claim for false imprisonment. *See German v. Sosa*, 399 F. App'x 554, 556 (11th Cir. 2010)

(applying arguable probable cause bar to plaintiff's "false arrest/false imprisonment claims").  Consequently, the finding of arguable probable cause in this matter is fatal to the claim of false imprisonment.

For his final claim against Pierce, plaintiff alleges intentional infliction of emotional distress.  (Doc. 4-2, 25-26)  Intentional infliction of emotion distress ("IIED"), however, is a purely state-law claim and therefore finds no grounding in § 1983, claims arising under which must state a violation of some federal constitutional right. *See Wells v. Simonds Abrasive Co.*, 345 U.S. 514, 520 (1953) ("Erie R. Co. v. Tompkins held that there is no federal common law of torts and that federal courts must not improvise one of their own but must follow that state's law which is applicable to the case."); *c.f. Paul v. Avril*, 812 F. Supp. 207, 212 (S.D. Fla. 1993) (recognizing state tort law cause of action in intentional infliction of emotional distress "under principles of pendent and ancillary jurisdiction"); *Stockett v. Tolin*, 791 F. Supp. 1536, 1555 (S.D. Fla. 1992) (exercising pendent jurisdiction over state tort claim of intentional infliction of emotional distress).

Although the "federal" IIED claim is only peripherally discussed in Pierce's summary judgment motion and supporting memorandum, plaintiff has articulated no basis for the recognition of such a cause of action.  To such an extent as plaintiff's IIED claim can be construed as arising from the allegedly false arrest, Pierce, as he argues at length in the motion for summary judgment, is entitled to qualified immunity because he possessed arguable probable cause to make the subject arrest. *See Wood*, 323 F.3d at 881 n.13.  Having determined that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law, the court recommends that summary judgment be granted in Pierce's favor as to the totality of plaintiff's federal-law claims. *See* Fed. R. Civ. P. 56(c)(2), 56(e) ("When

a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."); *Celotex Corp.*, 477 U.S. at 324 ("Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'").

Arguably remaining as to Pierce are plaintiff's purely state-law allegations.  In *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 345 (1988), the court considered "whether a federal district court has discretion under the doctrine of pendent jurisdiction to remand a properly removed case to state court when all federal-law claims in the action have been eliminated and only pendent state-law claims remain." The court concluded that a district court has discretion to remand to state court a removed case involving pendent claims when doing so would further the principles of judicial economy, convenience, fairness, and comity.  *See id.* at 357; *see also Hicks v. Moore*, 422 F.3d 1246, 1255 n.8 (11th Cir. 2005) (noting district court's discretion to remand plaintiff's state-law claims to state court after granting summary judgment on all federal claims in favor of defendant); *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088-89 (11th Cir. 2004) ("The decision to exercise supplemental jurisdiction over pendant state claims rests within the discretion of the district court.").

Although remand is available, the legal conclusions reached heretofore tend inevitably toward dismissal of the pendent state-law claims.  The issue of probable cause, which has already been resolved against plaintiff as to his federal-law claims,

is also determinative of the state-law allegations.[4]  *See Alamo Rent-A-Car, Inc. v. Mancusi*, 632 So. 2d 1352, 1355 (Fla. 1994) (establishing probable cause as a defense to the tort of malicious prosecution); *Mathis v. Coats*, 24 So. 3d 1284, 1289 (Fla. 2d DCA 2010) (holding sheriff deputy had probable cause to arrest motorist, such as to bar her claim for false arrest); *Weissman v. K Mart Corp.*, 396 So. 2d 1164, 1165 n.1 (Fla. 3d DCA 1981) ("False arrest and false imprisonment are different labels for the same cause of action.").

Under the principle of res judicata, plaintiff cannot reargue the finding of probable cause in a state court forum.  *See Schafler v. Indian Spring Maint. Ass'n*, 139 F. App'x 147, 150 (11th Cir. 2005) ("'Res judicata bars the filing of claims which were raised or could have been raised in an earlier proceeding.'" (quoting *Ragsdale v. Rubbermaid, Inc.*, 193 F.3d 1235, 1238 (11th Cir. 1999))); *Richardson v. Ala. State Bd. of Educ.*, 935 F.2d 1240, 1244 (11th Cir. 1991) ("The doctrine of res judicata . . . forecloses relitigation of matters actually or potentially litigated in an earlier lawsuit."); *McKinnon v. Blue Cross & Blue Shield of Ala.*, 935 F.2d 1187, 1192 (11th Cir. 1991) ("Res judicata is a doctrine of claim preclusion which operates to prevent litigation of matters that were raised or should have been raised in an earlier suit."). Because the operative facts and dispositive issue of law underlying the state-law

---

[4] Although a claimant need not establish want of probable cause to prevail on a state-law cause of action for abuse of process, here plaintiff grounds his purported abuse of process claim in the allegedly false arrest, to which a finding of probable cause is a defense. *See Lee v. Geiger*, 419 So. 2d 717, 719 (Fla. 1st DCA 1982) ("In a false arrest action, the defendant must establish the presence of probable cause."). Regarding the claim for intentional infliction of emotional distress, which tort contemplates acts so egregious as to be regarded intolerable in a civilized community, *see Ponton v. Scarfone*, 468 So. 2d 1009, 1011 (Fla. 2d DCA 1985), the finding of arguable probable cause all but negates the notion of conduct in breach of the aforementioned standard.

allegations have been adversely decided against plaintiff, his state-law claims should be dismissed in the present forum, in the interest of judicial economy.

## DUREN'S MOTION FOR SUMMARY JUDGMENT

Defendant Duren filed a motion for summary judgment and supporting memorandum (docs. 16, 18) against the plaintiff pursuant to FEDERAL RULE OF CIVIL PROCEDURE 56.  Duren states that there exists no genuine dispute as to any material fact regarding the federal claims asserted against him.  Accordingly, Duren concludes, he is entitled to summary judgment as a matter of law.  (Doc. 16, 1-3)

Duren's motion proceeds from the alleged premise that he was, at all times material to the complaint, a private citizen.  By definition, Duren reasons, plaintiff cannot recover against him for any of the constitutional deprivations alleged, because Duren was not acting under color of law.  (Doc. 18, 6-7)  Alternatively, Duren cites the language of plaintiff's complaint, which alleges liability for Duren's alleged "acts of negligence."  Duren argues that mere negligence cannot serve as the basis for a violation of § 1983.  (Doc. 18, 8)

## PLAINTIFF'S RESPONSE TO DUREN'S SUMMARY JUDGMENT MOTION

Plaintiff responds that Duren, operating in conjunction with defendant Pierce, acted under color of law to violate plaintiff's clearly established constitutional rights.  (Doc. 29, 3)  Asserting that a defendant need not be an officer of the state to be liable for a violation of constitutional rights under § 1983, plaintiff contends that Duren was jointly engaged with state officials in the challenged actions and thus was acting under color of law for purposes of § 1983.  (Doc. 29, 9)

## ANALYSIS OF DUREN'S MOTION FOR SUMMARY JUDGMENT

Plaintiff's federal claims are brought pursuant to 42 U.S.C. § 1983, which provides, "Every person who, under color of any statute, ordinance, regulation,

custom, or usage, of any State . . ., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ."  "By its terms, of course, the statute creates no substantive rights; it merely provides remedies for deprivations of rights established elsewhere."  *City of Okla. City v. Tuttle*, 471 U.S. 808, 816 (1985).  "In order to sustain a cause of action based on 42 U.S.C. § 1983, a plaintiff must make a prima facie showing of two elements:  (1) that the act or omission deprived plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States, and (2) that the act or omission was done by a person acting under color of law."  *Dollar v. Haralson Cnty., Ga.*, 704 F.2d 1540, 1542-43 (11th Cir. 1983).

As plaintiff alleges at various turns in his fifth amended complaint, Duren was at all times material to this action a "private citizen."  (Doc. 4-2, 4)  Irrespective of the nature of his conduct, Duren cannot be held liable under § 1983 because he did not act under color of law.  *See Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1277 (11th Cir. 2003) ("[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." (quoting *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999))).  Because plaintiff offers no proof that Duren acted under color of law when he filed a complaint with law enforcement, summary judgment should be granted in Duren's favor as to the totality of plaintiff's federal claims.  *See Sullivan*, 526 U.S. at 49-50 ("To state a claim for relief in an action brought under § 1983, respondents must establish that they were deprived of a right secured by the

Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law.").

The Eleventh Circuit has employed three distinct tests in determining whether the actions of a private entity are properly attributed to the state.  *See Focus on the Family*, 344 F.3d at 1277 (articulating the standards defining the public function test, the state compulsion test, and the nexus/joint action test).  Notwithstanding plaintiff's conclusory assertions that Duren and Pierce acted in concert, Mr. Jeter does not make even the slightest showing that Duren's actions are properly attributable to the state under any of the three tests.  Instead, as Duren asserts, the mere act of reporting a suspected criminal offense to law enforcement is insufficient to establish state action for purposes of a claim under § 1983.  Similarly, plaintiff has offered no factual detail tending to suggest a conspiracy between Duren and Pierce, such that a remedy under § 1983 might be available.  *See Kadivar v. Stone*, 804 F.2d 635, 637 (11th Cir. 1986) ("A private person who conspires with state officials acting under color of state law may be held liable for damages in a § 1983 action for participating in the conspiracy regardless of whether the state officials are themselves immune from suit.").  In short, plaintiff has failed to demonstrate that state action exists as it relates to the conduct of defendant Duren, making summary judgment the appropriate remedy as to all of plaintiff's federal claims.

This court passes no judgment on the merit of plaintiff's surviving state-law allegations—unlike those state-law claims raised against Pierce, the operative facts and dispositive issues of law have yet to be determined in relation to plaintiff's state-law causes of action against Duren.  In the interests of economy and fairness, the court recommends that plaintiff's pendent state-law claims against Duren, which were

also originally filed in state court and removed to federal court under 28 U.S.C. § 1441, be remanded to state court rather than dismissed.  *See* 28 U.S.C. § 1367(c)(3).

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Asserting that the pleadings and affidavits show the absence of a triable issue of fact, plaintiff moves for the entry of summary judgment or, in the alternative, leave to amend his federal-law claims.  (Doc. 8, 1-2)  Plaintiff seeks summary judgment on all of his state and federal claims against each defendant, and against defendant Pierce in his official and individual capacities.  Except as relevant to the forthcoming discussion of plaintiff's summary judgment claims, the court need not review the arguments raised in response to the motion by defendants, who set forth substantially the same theories in opposition to plaintiff's motion for summary judgment as they did in support of their own.

On summary judgment, the reviewing court must "identify and explain the substantive law governing the action, and then in light of that law determine whether there is a genuine dispute over dispositive facts."  *See Iberia Foods Corp. v. Romeo*, 150 F.3d 298, 302 (3d Cir. 1998).  "If upon review of cross motions for summary judgment [the court] find[s] no genuine dispute over material facts, then [it] will order judgment to be entered in favor of the party deserving judgment in light of the law and undisputed facts."  *Id.*  When applied to the undisputed facts, the precedential rules underlying the legal theories of municipal liability and arguable probable cause constitute an absolute bar to plaintiff's federal and state actions against Pierce for abuse of process, false arrest, malicious prosecution, and false imprisonment.  *See German*, 399 F. App'x at 556 (false imprisonment); *Grider*, 618 F.3d at 1257 n.25 (false arrest and malicious prosecution); *Paullin*, 171 F. App'x at 773 (abuse of process).  Cases like *Wells*, moreover, make clear that "there is no federal common

law of torts[,]" thus undermining plaintiff's purported federal claim of intentional infliction of emotional distress. *See* 345 U.S. at 520.

Regarding the federal claims raised against Duren, the state action doctrine and its familiar principles preclude plaintiff's recovery. *See Sullivan*, 526 U.S. at 49-50 ("To state a claim for relief in an action brought under § 1983, respondents must establish that they were deprived of a right secured by the Constitution or law of the United States, and that the alleged deprivation was committed under color of state law."); *Focus on the Family*, 344 F.3d at 1277 ("'[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful.'" (quoting *Sullivan*, 526 U.S. at 50)). Because the cross-motions for summary judgment now under consideration do not reveal a genuine dispute over dispositive facts, plaintiff's motion for summary judgment should be denied *in toto* except as to the purely state-law claims alleged against Duren, and judgment entered in favor of the defendants. *See Romeo*, 150 F.3d at 302.

In the alternative, plaintiff moves for leave to amend his federal claims to correct various "deficiencies" in his verified fifth amended complaint. Plaintiff focuses primarily on the allegation that the defendants acted in concert to violate his constitutional rights, such that a finding of state action may be attributed to defendant Duren. To restate, plaintiff has not alleged facts with regard to Duren even hinting at action properly attributable to the state. Consequently, amendment to this effect would be futile. Plaintiff, apparently aware of the prevailing rule, also seeks to retract the contention that his alleged injuries resulted from "acts of negligence." Mere negligence, of course, does not ordinarily constitute the sort of injury cognizable under § 1983. *See Owens v. City of Atlanta*, 780 F.2d 1564, 1566 (11th Cir. 1986). But even were plaintiff to eschew the language of negligence, his federal claims, still

burdened by the conclusions relating to probable cause and state action, would fare no better.  It is apparent that in light of the undisputed facts alleged, plaintiff cannot reconfigure his federal claims in any such manner as to state a viable cause of action under § 1983 against either defendant.  Accordingly, the motion to amend is denied.

Only plaintiff's state-law claims remain.  Having dismissed all claims over which it has original jurisdiction, and in accordance with its authority under 28 U.S.C. § 1367(c)(3), and controlling case law, the court should decline to exercise supplemental jurisdiction and should remand these state-law claims to state court. *See Hicks*, 422 F.3d at 1255 n.8 (noting district court's discretion to remand plaintiff's state-law claims to state court after granting summary judgment on all federal claims in favor of defendant); *Raney*, 370 F.3d at 1088-89 ("The decision to exercise supplemental jurisdiction over pendant state claims rests within the discretion of the district court.").

Accordingly, it is hereby ORDERED:

That plaintiff's motion for leave to amend his federal claims (doc. 8) be DENIED.

And it is respectfully RECOMMENDED:

1.   That defendant Pierce's motion for summary judgment (doc. 15) be GRANTED.

2.   Consistent with this order, that the clerk be directed to enter summary final judgment in favor of defendant Pierce.

3.   That defendant Duren's motion for partial summary judgment (doc. 16) be GRANTED.

4.  Consistent with this order, that the clerk be directed to enter summary final judgment in favor of defendant Duren as to all of plaintiff's federal claims under 42 U.S.C. § 1983.

5.  That plaintiff's motion for summary judgment (doc. 8) be DENIED.

6.  That plaintiff's pendent state-law tort claims raised against defendant Duren be remanded to state court.

7.  That the clerk be directed to close the file.

At Pensacola, Florida this 23rd day of February, 2012.

/s/ *Charles J. Kahn, Jr.*
CHARLES J. KAHN, JR.
UNITED STATES MAGISTRATE JUDGE

<u>NOTICE TO THE PARTIES</u>

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>.  A copy of any objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts,* 858 F.2d 698, 701 (11th Cir. 1988).